## ATTACHMENT A
## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Beginning in at least December 2016 and continuing through in or about April 2017, in the District of Maryland and elsewhere, the Defendant, **ANNA TERESA SHIPLEY, a/k/a "ANNA BANANA" ("SHIPLEY")**, together with co-defendant **Kenneth Wayne Hart, a/k/a "Redds" ("Hart")**, conspired with each other to, and did, manage and direct a prostitution business by means of force, fraud, and coercion. Beginning in or about December 2016, **SHIPLEY** began working for **Hart** to ensure that the female victims who **Hart** recruited engaged in commercial sex acts on a daily basis. At this time, **SHIPLEY** began selling heroin with **Hart**.

Together, **SHIPLEY** and **Hart** managed as many as three women at a time, including Victim 1, Victim 2, and Victim 3. In or about February 2017 and March 2017, **Hart** recruited and enticed Victims 1, 2, and 3 to engage in commercial sex acts in Maryland and the District of Columbia under the direction of **Hart** and **SHIPLEY**. From in or about February 2017 to April 2017 (until the date of **Hart**'s arrest), in the District of Maryland and elsewhere, Victims 1, 2, and 3 engaged in commercial sex acts at the direction of **Hart** and **SHIPLEY** at, among other locations, a condominium in Beltsville, Maryland, and hotels in College Park, Maryland.

**SHIPLEY** and **Hart** utilized, and also forced the victims to utilize, social networking websites, including "Backpage.com," to advertise prostitution services for the victims they managed, including Victims 1, 2, and 3. "Backpage.com" was commonly used by prostitutes and "pimps" to advertise sexual services. The advertisements provided a description of the prostitute, a picture of a woman (typically with a nickname), and contact information to secure an appointment or "date" with the prostitute. **Hart** monitored the advertisements and coordinated with "clients" to arrange for prostitution services with victims managed by **Hart** and **SHIPLEY**, including Victims 1, 2, and 3.

Both **Hart** and **SHIPLEY** managed day-to-day activities of the prostitution business. **Hart** and **SHIPLEY** supplied narcotics, specifically heroin and cocaine base, to the victims on a daily basis and threatened to or did withhold narcotics, forcing the victims to suffer withdrawals if the victims displayed any sign of disobedience or tried to leave the condominium or the hotels where the commercial sex acts occurred. At the end of each "date," either **Hart** or **SHIPLEY** coordinated with the victims to personally retrieve the money. **Hart** and **SHIPLEY** required Victims 1, 2, and 3 to turn over all money earned through their acts of prostitution. **Hart** also maintained control of the victims by using physical force, threatening physical force, and verbally abusing the victims to engage in prostitution against their will. For example, in or about March 2017 and April 2017, **Hart** slapped and punched one of the victims when **Hart** discovered that the victim attempted to hold back for herself earnings made from engaging in commercial sex acts. **SHIPLEY** assisted in **Hart**'s physical restraint of the victims, including **Hart** locking victims in a bedroom at the condominium for hours or days at a time, and using narcotics to control and coerce the victims. **Hart** was the only one with the key to the bedroom, and the victims could not open the door from

the inside. Furthermore, **SHIPLEY** communicated threats to the women when instructed to do so by **Hart**.

On or about April 25, 2017, law enforcement conducted an undercover prostitution sting operation. An undercover officer ("UC") contacted Victim 2 in response to an advertisement placed on Backpage.com. The UC engaged the victim in a conversation regarding the cost of sex, agreed to have sex for $120, and then told Victim 2 that he was on his way. Upon arrival at the hotel in College Park, Maryland, the UC knocked on the door, and Victim 2 opened the door and let the UC in the room. The UC confirmed that the price for sex was $120 and placed the money on the dresser.

During the time of the above-mentioned sting operation, law enforcement observed **SHIPLEY** approach the hotel on foot carrying a bag of clothes. **SHIPLEY** began yelling at Victim 2 and was stopped by law enforcement. A search of her person revealed packaging materials (four plastic bags with heroin residue, as confirmed by drug laboratory analysis), which were consistent with a person involved in the distribution of narcotics. **SHIPLEY** admitted to selling narcotics with **Hart**, and law enforcement arrested **SHIPLEY**. Then, **Hart** arrived at the hotel parking lot and got out of his vehicle. When law enforcement searched **Hart**'s person, law enforcement located and recovered, as confirmed by drug laboratory analysis, approximately seven grams of heroin, a Schedule I controlled substance; approximately 2 grams of cocaine, a Schedule II controlled substance; and 29 Tramadol pills, a Schedule IV controlled substance. Inside **Hart**'s vehicle, law enforcement also located one of the female victims.

SO STIPULATED:

_____
Jennifer R. Sykes
Kristi N. O'Malley
Assistant United States Attorneys

_____
Anna Teresa Shipley
Defendant

_____
Peter L. Goldman, Esq.
Counsel for Defendant

11